IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AMBER HICKS,                                              CV 04-00825-AS

                        Plaintiff,                       FINDINGS AND
                                                         RECOMMENDATION

              v.

CITY OF PORTLAND,
MARK KRUGER, personally,
DAVID WOBORIL, personally

                        Defendants.

_____


ASHMANSKAS, Magistrate Judge:

       This dispute concerns the legality of Plaintiff's arrest during an anti-war protest in

Portland, Oregon, in August 2003.  Plaintiff brought this action against the City of Portland,

Portland Police Officer Mark Kruger ("Kruger"), and Portland Deputy City Attorney David

Woboril ("Defendants") under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, alleging violations of her

constitutional rights, as well as pendent State law claims.  Plaintiff alleges Kruger: 1) unlawfully

arrested Plaintiff; 2) used excessive force during the arrest; and 3) violated Plaintiff's First

PAGE 1 – FINDINGS AND RECOMMENDATION

Amendment rights under the U.S. Constitution. Plaintiff also claims Woboril and Kruger conspired to violate her constitutional rights in violation of 42 U.S.C. § 1985. Plaintiff also asserts State law claims of Battery, Intentional Infliction of Emotional Distress, and Negligence against Kruger and the City of Portland.

Currently before the court are Defendants' Motion for Summary Judgment (doc. 23), and Plaintiff's Cross–Motion for Partial Summary Judgment (doc. 32). For the reasons that follow, Defendants' motion should be GRANTED and Plaintiff's motion should be DENIED because Plaintiff has failed to demonstrate that there are any issues of material fact to be tried, and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISMISSAL OF WOBORIL

As an initial matter, Plaintiff concedes that there is a lack of evidence sufficient to implicate Portland Deputy City Attorney David Woboril ("Woboril"). Therefore, Defendants' summary judgment motion should be GRANTED as to Woboril and all claims involving him. Accordingly, Plaintiff's claims against Woboril and Kruger for conspiracy to violate Plaintiff's constitutional rights under 42 U.S.C. § 1985 must fail because conspiracy, by definition, requires an agreement between two or more persons. See 42 U.S.C. § 1985.

## BACKGROUND

On August 21, 2003, President George W. Bush attended a fund raising event at the University of Portland. Plaintiff—a self-described "political activist" who was "very involved in the anti-war movement"[1]—attended the event, not as a "supporter" of the President, but to

---

[1] Plaintiff was very involved in the anti-war movement. She was a very vocal and visible presence at the peace encampments across the street from Portland City Hall during the six months preceding the events of August 21, 2003. Plaintiff has appeared at city counsel

protest the war in Iraq. (Hicks Dep. 17:7–17:8). Soon after Plaintiff arrived at the University of Portland, however, President Bush left the event and people began leaving the protest. Several protesters, including Plaintiff, stayed at the University of Portland to wait for President Bush's supporters to leave the event. When it became clear that President Bush's supporters were not immediately leaving the event, Plaintiff decided to go home.

On her way home, Plaintiff saw "trucks of police officers" traveling "very quickly" back toward the University of Portland. (Hicks Dep. 27:13–27:18). Plaintiff decided to follow the police to see what was happening. She followed them to the Columbia Park Annex where she noticed a large group of protesters and a number of police vehicles, riot police, and officers on bikes. (Hicks Dep. 29:15–31:4). Apparently, shortly before Plaintiff arrived at the park, several protesters ran out into the street and blocked the buses carrying President Bush's supporters, who were leaving the fund raising event at the University. Law enforcement at the scene called for backup to help disperse the protesters and clear the way for the buses to leave the University.

The Portland Police Bureau's Rapid Response Team—dressed in full riot gear—responded to the call for backup, and began to push the protesters back into the park with the help of several dozen plain clothed officers and officers on bicycles. Police then formed a police barricade to keep the protesters out of the street and confined to the grassy area of the

_____

meetings, where she has seen Defendant Woboril, Portland Deputy City Attorney, on several occasions. In her deposition, however, Ms. Hicks stated that she did not recall ever meeting Mr. Woboril. Although Mr. Woboril was present at the protest, Plaintiff did not actually see him that day. Plaintiff's pleadings suggest that Defendants Woboril and Kruger conspired to unlawfully arrest Plaintiff and deter her right to political expression. Plaintiff has presented no evidence, however, which could permit the court to conclude that Woboril participated in, encouraged, or ordered Plaintiff's arrest.

park.[2] Through loudspeakers mounted on top of a police van, police repeatedly ordered the protesters to stay out of the street, and warned that anyone entering the street would be subject to arrest. The police warnings are clearly audible on the video.[3]

After several obviously anxious moments, protesters began to disperse into the park and police cleared the street. The riot police boarded police trucks, and began to leave the scene. Plain clothes officers and bicycle officers also began to disengage. Police announcements over the loudspeaker ceased, and police reopened the street to automobile and limited pedestrian traffic. The video shows several individuals freely crossing the street at the intersection. Police officers can be seen on the video standing around, talking, and directing traffic.

At least fifteen minutes later—after the last police announcement can be heard over the loudspeakers, after riot police left the scene, and after police reopened the street to allow limited pedestrian traffic—Plaintiff entered the street.[4] Plaintiff claims that she never specifically heard

---

[2] Video footage captured by a protester at the Columbia Park Annex demonstrates the chaotic events that occurred August 21, 2003, including part of Plaintiff's arrest. The video depicts a tense standoff between police officers attempting to keep protesters out of the street and the protesters. Although the majority of the protesters at the park that day were peaceful, the video footage shows some of the protesters attempting to provoke or confront the officers. Some of the protesters were clearly intimidated and agitated by the extent and nature of the police presence at the park. Plaintiff reported feeling confused, fearful, and intimidated by the police activity. In her deposition, she stated, "The amount of police activity, including tanks that were used, were very intimidating . . . . And the fear tactics and the intimidation were part of violating [our] freedom of speech." (Hicks Dep. 15:17–16:2).

[3] As demonstrated by that video footage, the police repeated their warnings at least six times that day. The police repeatedly warn protesters, "This is the Portland Police. In the name of the State of Oregon, you must immediately disperse. You must leave the area of the sidewalk and move into the park. If you fail to do so, you may be subject to arrest. You may also be subject to the use of chemical agents or impact weapons."

[4] Although the video does not depict Plaintiff entering the street, Plaintiff acknowledges taking "a step to two steps" into the street to see what was going on, and then back to the curb. Ms. Steinmetz remembers Plaintiff "going out into the street after they (the police) asked us not

the police say that people entering the street would be arrested. (Hicks Dep. 31:7–31:16). As noted, however, the warning can be clearly heard on the video captured at the scene. Plaintiff also acknowledged hearing some kind of announcement. (Hicks Dep. 31:7–11). Brandi Steinmetz, a witness to the events in the park, specifically recalled hearing the warnings in her deposition. (Steinmetz Dep. 19:1–19:14, 20:10). Portland Police Officer Mark Kruger, who was assisting in crowd control, also heard the announcements.[5]

Kruger saw Plaintiff walk into the street.[6] (Kruger Dep. 51:4–51:23). He claims that Plaintiff was the only protester he saw enter the street.[7] (Kruger Dep. 54:18–54:22). Despite the fact that the situation appeared to be under control, and police had begun to "disengage" from the crowd, Kruger followed Plaintiff as she stepped back into the park and began to move

---

to . . . . [a]nd almost thinking it was kind of funny–she went out into the street and looked up and sort of waived her hands, about five feet off the curb, and then turned and went directly back into the park where all the people were."

[5]Defendant Kruger has been a Portland Police Officer since 1994. Defendant was denied employment as a police officer with the Los Angeles Police Department and the Washington State Police. Kruger admits that his employment applications with those police departments was denied because he failed their background checks. Plaintiff suggests that fact demonstrates that the City of Portland did not perform an adequate background check before hiring Defendant. Plaintiff also notes that in 1995, Kruger was ordered to undergo command counseling for using foul language with a civilian. Kruger was also named as a defendant in two prior cases involving allegations of excessive force with the use of pepper spray. Defendant has been the focus of some negative publicity relating to his interest in collecting Nazi paraphernalia. I find that these allegations—even if true—are of limited evidentiary value. Moreover, these facts are not outcome determinative in this case.

[6] Defendant Kruger stated that he saw Plaintiff enter the street on two separate occasions after the police dispersal order. Only after the second violation did Defendant decide to take Plaintiff into custody.

[7]Plaintiff does not appear to dispute this statement, and the video footage appears to support Defendant's statement. On the video, the only pedestrians visible in the street are those who are crossing at the cross-walk at the direction of traffic control officers.

PAGE 5 – FINDINGS AND RECOMMENDATION

slowly–"hardly at all"– through the crowd of protesters. (Kruger Dep. 58:2–58:3). Kruger did

not order Plaintiff to stop, nor did he ask her to follow him. Instead, he approached Plaintiff

from behind, and grabbed her arm to take her into custody.[8] As Kruger started to lead Plaintiff

out of the crowd and into custody, several protesters started shouting and "rushing in" on

Plaintiff and Kruger. (Steinmetz Dep. 26:10–26:13). After taking two or three steps with

Kruger, Plaintiff tried to pull away and dropped to the ground. Kruger maintained his grip on

Plaintiff's arm and began to drag her a short distance out of the park and away from the

protesters, allegedly telling her, "You've been pushing your luck for too long young lady."

(Hicks Aff. in Response to Defs. Motion for Summ. J. ¶ 14). Once out of the grassy area of the

park, Kruger and another officer pulled Plaintiff to her feet and started to put her in handcuffs.

Other officers immediately assisted by surrounding Kruger and Plaintiff, and blocking other

protesters out of the area. According to Ms. Steinmetz:

> all hell broke loose. . . . People were upset. People were visibly upset and they were
> scared, and instinctively they went to find out what was going on. The police took it that
> it seemed as a riot, and it was their (i.e., the police) reaction that caused . . . all this
> craziness to happen. (Steinmetz Dep. 33:19–33:24).

Throughout the incident, Plaintiff repeatedly stated "I am not resisting arrest." (Hicks

Aff. in Response to Defs. Motion for Summ. J. ¶ 10). Kruger conceded Plaintiff was not actively

resisting arrest, but suggests that she passively resisted arrest by falling to the ground. He also

conceded Plaintiff did not pose any safety threat to him or anyone else.[9] Kruger stated that he

---

[8]Defendant grabbed Plaintiff's wrist with one hand and her arm just above the elbow with
the other.

[9] Plaintiff is 5'1" tall, and weighs 145 pounds. Defendant Kruger admitted that he had no
reason to believe that Plaintiff was carrying any weapons or any easily destroyable evidence
(e.g., drugs).

wanted to get her into custody and out of the crowd as quickly as possible, as he did not want to be in a position where anyone in the crowd could interfere with the arrest. (Kruger Dep. 58:7–58:12).

As Kruger led Plaintiff to a police custody van, other protesters confronted him. Apprehensive that the protesters would attempt to interfere with his arrest of Plaintiff, Kruger pushed one protester away and, at the same time, shoved Plaintiff against the van to place himself between the protester and Plaintiff. Plaintiff received an injury to her shoulder, a bruise over her left eye, and lost her sandals during the arrest.

Plaintiff was charged with Interfering with a Peace Officer in violation of Or. Rev. Stat. § 162.247, and later released. The charges against her were eventually dropped because Kruger failed to appear at Plaintiff's trial.

## PARTIES' CLAIMS

Plaintiff brought the present action against the City of Portland, Portland Police Officer Mark Kruger, and Portland Deputy City Attorney David Woboril under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and pendent State law claims. Plaintiff alleges Kruger: 1) unlawfully arrested Plaintiff; 2) used an unreasonable amount of force during the arrest; and 3) violated Plaintiff's First Amendment rights under the U.S. Constitution. Plaintiff also asserts State law claims of Battery, Intentional Infliction of Emotional Distress, and Negligence against Kruger arising from his allegedly wrongful arrest and use of excessive force. In addition, Plaintiff claims the City of Portland was negligent in hiring, training, and supervising Officer Kruger.

Both Plaintiff and Defendants filed motions for summary judgment. Defendants seek summary judgment on all of Plaintiff's claims on the grounds that Kruger had probable cause to

arrest Plaintiff for violating a lawful police order, and his use of force in arresting Plaintiff was reasonable under the circumstances. Alternatively, Defendants argue that Kruger is entitled to qualified immunity. Defendants also contend Plaintiff cannot present any facts to support a First Amendment violation, or any of the State law claims alleged in the Complaint.

Plaintiff filed a cross-motion for summary judgment, arguing that Officer Kruger: 1) lacked probable cause to arrest; 2) used an unreasonable amount of force during her arrest; 3) violated her First Amendment rights; and 4) is not entitled to qualified immunity. Plaintiff also moves for summary judgment on her State law claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Vander v. United States Dept. of Justice, 268 F.3d 661, 663 (9th Cir. 2001). A party seeking summary judgment bears the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains. Id. The burden on the moving party may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which she bears the burden of proof at trial, summary judgment must be granted. Id. at 322-23. Substantive law dictates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might

affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Id. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Robi v. Reed, 173 F.3d 736, 739 (9th Cir. 1999), *cert. denied*, 528 U.S. 952 (1999).

## DISCUSSION

## I.  Claims Under 42 U.S.C. § 1983

Plaintiff brings claims against Defendants under 42 U.S.C. § 1983, which provides a federal cause of action against any person who, acting under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim for relief in an action brought under section 1983, a plaintiff must establish: 1) she was deprived of a right secured by the U.S. Constitution or laws of the United States; and 2) the alleged deprivation was committed under color of state law. Azer v. Connell, 306 F.3d 930, 935 (9th Cir. 2002). Here, it is undisputed that Officer Kruger was acting under color of state law when he arrested Plaintiff.

## II.  Qualified Immunity

"Qualified" or "good faith" immunity shields government officials performing discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified Immunity is an "entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001),

*quoting* <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). The privilege is an immunity from suit rather than a mere defense to liability. <u>Saucier</u>, 533 U.S. at 200.

Where a defendant—as is the case here—asserts a claim of qualified immunity, the court must ask: 1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," and 2) if a violation of a constitutional right is found, "whether the right was clearly established." <u>Saucier</u>, 533 U.S. at 200-01. The court must "concentrate at the outset on the definition of the constitutional right and to determine whether, on the facts alleged, a constitutional violation could be found." <u>Id</u>. at 207. If the plaintiff fails to establish a constitutional violations, the inquiry comes to an end and the state actors are immune from suit. <u>Id</u>. at 201. Only if a constitutional violation can be established does the court ask whether the right was clearly established. <u>Id</u>. In determining whether the right was clearly established, the relevant question is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Id</u>. at 202; <u>see also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.").

### III. Fourth Amendment Claims

<u>A. Wrongful Arrest</u>

In her first cause of action, Plaintiff alleges Kruger unlawfully arrested her in violation of her right to be free of unreasonable search and seizure under the Fourth Amendment to the U.S. Constitution. More specifically, Plaintiff argues Kruger lacked probable cause to arrest.

The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  It is undisputed that the Fourth Amendment prohibits a police officer from making an arrest without a warrant or probable cause to believe the suspect has committed a crime.  Beck v. Ohio, 379 U.S. 89, 91 (1964); MacKinney v. Nielsen, 69 F.3d 1002, 1005 (9th Cir. 1995).  A warrantless arrest by a law enforcement officer is reasonable–and thus lawful–under the Fourth Amendment if supported by probable cause.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officers at the time of their actions, a prudent person would have concluded that there was a fair probability that the defendant had committed or is committing a crime.  Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004); Murdock v. Stout, 54 F.3d 1437, 1441 (9th Cir. 1995).  Probable cause requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred.  Murdock, 54 F.3d at 1441.  The question is whether the officer's actions were objectively reasonable in light of the circumstances confronting him, without regard to his underlying intent or motivation.  Graham v. Connor, 490 U.S. 386, 397 (1989).

In Oregon, a police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed a misdemeanor or any other crime in the officer's presence.  Or. Rev. Stat. § 133.310(1)(b) & (d).  "Probable cause" means "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."  Or. Rev. Stat. § 131.005(11).

Defendants argue: 1) Officer Kruger had probable cause to arrest Plaintiff; and 2) if not, Kruger is entitled to qualified immunity on Plaintiff's unlawful arrest claim. Defendants maintain Kruger had probable cause to arrest Plaintiff for violating Or. Rev. Stat. § 162.247, Interfering with a Peace Officer, which provides:

> (1) A person commits the crime of interfering with a peace officer . . . if the person, knowing that another person is a peace officer . . . :
>
>> (a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer . . . from performing the lawful duties of the officer with regards to another person; or
>>
>> (b) Refuses to obey a <u>lawful order</u> by the peace officer . . . .[10]
>
> (2) Interfering with a peace officer . . . is a Class A misdemeanor.

<u>Id</u>. (emphasis added). A lawful order is one authorized by, and not contrary to, substantive law. <u>State v. Ausmus</u>, 336 Or. 493, 503-04 (2003).

Defendants point to several provisions of the Portland City Code and Oregon law that authorize police officers to issue lawful street closure or dispersal orders. For example, "whenever a threat to the public health or safety is created by <u>any</u> emergency, a Portland police officer may restrict or deny access to any persons to the area . . . ." Portland City Code 14C.30.010(A). "Restrict or deny access" means that the police have "the authority to regulate or prohibit the presence or movement of persons or vehicles to, from, and within any area . . .

---

[10] In their briefing, Defendants point out that in 2004, the Oregon Court of Appeals held that Or. Rev. Stat. § 162.247(1)(b) was unconstitutionally overbroad, and violated Article I, sections 8 and 26 of the Oregon Constitution because the language proscribing a refusal to obey a peace officer prohibited a significant amount of constitutionally protected behavior. <u>State v. Illig-Renn</u>, 196 Or. App. 765 (2004). At the time of the Plaintiff's arrest in this case, however, and at the time the State of Oregon prosecuted Plaintiff, Or. Rev. Stat. § 162.247(1)(b) was a valid criminal statute. In any event, in August 2006, the Oregon Supreme Court reversed the Oregon Court of Appeals, holding that Or. Rev. Stat. § 162.247(1)(b) is not facially overbroad or vague. <u>State v. Illig-Renn</u>, ___ P.3d ___, 2006 WL 2439841 (Or. Aug. 24, 2006).

until the reason for such restriction or denial of access no longer exists." Id. 14C.30.010(C).

Portland City Code 14C.30.030 authorizes police to direct pedestrian and vehicular traffic on any public right of way. Additionally, Portland City Code 14C.30.020(A) grants Portland Police the authority to make arrests for violations of any provision of Title 14 of the City Code. Separately, Oregon state law states:

> When any five or more persons, whether armed or not, are unlawfully or riotously assembled in any county, city, town or village, the sheriff of the county and the deputies of the sheriff, the mayor of the city, town or village, or chief executive officer or officers thereof, and the justice of the peace of the district where the assemblage takes place, or such of them as can forthwith be collected, shall go among the persons assembled, or as near to them as they can with safety, and command them in the name of the State of Oregon to disperse. If, so commanded, they do not immediately disperse, the officer must arrest them or cause them to be arrested; and they may be punished according to law.

Or. Rev. Stat. § 131.675 (emphasis added).

In the present case, Kruger had probable cause to arrest Plaintiff. Plaintiff does not dispute that the Portland Police Bureau had the authority to issue the dispersal orders. The dispersal orders were clearly justified under any one of the several Portland City Code and Oregon statutory provisions that Defendants cite. The announcements ordering protesters to stay out of the street are clearly audible on the video footage taken at the scene. Kruger and Ms. Steinmetz, a witness at the park, heard the announcements. After the police announced that anyone entering the street would be subject to arrest, Ms. Steinmetz saw Plaintiff enter the street. Indeed, Plaintiff acknowledged going into the street after police issued those announcements. Kruger knew that it was a crime to refuse to obey a lawful police order, and he saw Plaintiff go into the street on two separate occasions after police issued the order to stay out of the street. Whether Plaintiff entered the street twice—as Kruger claims—or once—as Plaintiff maintains—does not create a material issue of fact. Plaintiff acknowledges entering the street

after police issued a lawful order to stay our of the street.  Thus, Defendant Kruger had probable cause to arrest Plaintiff for refusing to obey a lawful police order.

Plaintiff argues that she did not understand the police announcements ordering the protesters to stay out of the street.  She argues that lacked the mental state to willfully defy a dispersal order, and therefore did not necessarily violate the law.  Plaintiff also suggests that Defendant Kruger acted unreasonably in failing to investigate or talk to Plaintiff to find out whether she heard the dispersal order before arresting her.

Plaintiff's arguments are unpersuasive.  Aside from the obvious practical problems in requiring an officer to be inquire into the mental state of a suspect before making an arrest, Plaintiff cites no legal authority to support her argument.  Given the nature and extent of the police activity at the park that day, and the fact that all of the other protesters appeared to understand and comply with the police officers' efforts to clear the street, Plaintiff's assertion that she did not understand the police order to stay out of the street is dubious at best.  Moreover, although Plaintiff's mental state may be relevant in proving her criminal liability, her mental state is simply not relevant when determining whether Kruger had probable cause to arrest.  In determining probable cause, the court must examine the totality of the circumstances <u>known to the officer at the time of the arrest</u>.  <u>Murdock</u>, 54 F.3d at 1441.  Probable cause does not require certainty.  <u>Id</u>.  Rather, probable cause simply requires a fair probability or substantial chance that the suspect has committed a crime.  <u>Id</u>.  As noted, refusing to obey a lawful police order is an arrestable offense, and Plaintiff does not dispute that the police lawfully ordered the protesters out of the street.  Plaintiff acknowledged that she willfully entered the street after police made several announcements over the loudspeakers.  Officer Kruger saw Plaintiff enter the street after

police issued orders to stay out of the street.  Thus, under the totality of circumstances <u>known to Officer Kruger at the time of arrest</u>, he certainly had probable cause to believe Plaintiff violated a lawful police order.

Plaintiff has failed to raise any material question of fact as to Kruger's probable cause to arrest.  Moreover, considering the evidence in the light most favorable to her, Plaintiff has failed to establish a claim for unlawful arrest, and Defendants are entitled to judgment as a matter of law.  Therefore, Defendants' motion for summary judgment on Plaintiff's wrongful arrest claim should be GRANTED.

Assuming *arguendo* that Plaintiff could show that Kruger violated Plaintiff's Fourth Amendment right to be free from unlawful arrest, Plaintiff has wholly failed to address the second step of the <u>Saucier</u> qualified immunity analysis—that is, Plaintiff has failed to establish that Kruger's decision to arrest was so obviously unlawful that a reasonable police officer would have known he was violating Plaintiff's rights.  <u>See</u> <u>Saucier</u>, 533 U.S. at 201 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").  Under the circumstances, a reasonable officer could have believed Kruger had probable cause to arrest Plaintiff, and that the arrest was therefore lawful. Plaintiff has neither raised any argument nor cited any case law to the contrary.  Having failed to establish that Plaintiff's arrest was clearly unlawful, Officer Kruger is entitled to qualified immunity on Plaintiff's wrongful arrest claim.

### <u>B.  Excessive Force</u>

Plaintiff claims Kruger used excessive force in carrying out her arrest in violation of the Fourth Amendment.  More specifically, Plaintiff asserts two separate incidents of excessive

force: 1) when Kruger grabbed Plaintiff's arm and dragged her a short distance out of the park after she fell to the ground; and 2) when Kruger shoved her into a police van after Plaintiff was in police custody. The court disagrees.

"The use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." White v. Pierce County, 797 F.2d 812, 816 (9th Cir. 1986). The Fourth Amendment does not, however, prohibit a police officer's use of reasonable force during an arrest. Graham v. Connor, 490 U.S. 386, 395-97 (1989). Reasonable force is that force which is necessary to secure the safety of the officers during a search or arrest. Id. at 397.

In analyzing excessive force claims, the question is whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. The reasonableness of the force used is determined by "careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). In other words, the court must determine whether the degree of force used by the officer was warranted by the governmental interests at stake. Deorle v. Rutherford, 272 F.3d 1272, 1282 (9th Cir. 2001).

### 1. Nature and Quality of the Intrusion

In determining the reasonableness of the force used, the court must first assess the "nature and quality of the intrusion" by evaluating the "type and amount of force inflicted." Id. at 1279. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Forrester v. City of San Diego, 25 F.3d 804,

810 (9th Cir. 1994) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  Indeed, the right to make an arrest carries with it the inherent right to use some degree of force.  Graham, 490 U.S. at 396.

### a. Grab and Pull

Plaintiff first alleges that Kruger used excessive force when he grabbed her arm and dragged her a short distance out of the park after she fell to the ground.  The undisputed video demonstrates, however, that Kruger's use of force in arresting Plaintiff and leading her out of the crowd was minimal.  The video shows Kruger grabbing Plaintiff's wrist with one hand and her upper arm with his other hand, and leading her out of the park and toward the street.  Plaintiff took two steps with Kruger, and then attempted to pull away, dropping to the ground in the middle of the crowd of protesters.  Immediately, the crowd became visibly agitated and began to close in on Kruger and Plaintiff.  Kruger maintained his grip on Plaintiff's wrist and dragged her a short distance out of the park, and away from the crowd.  With the assistance of another officer, Kruger helped Plaintiff to her feet and began to put her in handcuffs.  There is nothing on the video that suggests that the degree of force used by Kruger in arresting Plaintiff was enough to cause serious physical injury.

### b. Shove into the Van

Plaintiff further alleges that Defendant used excessive force when he "shoved her into a van."  Plaintiff's Amended Complaint described Defendant's actions as a "shove."  In her deposition, Plaintiff stated "my head was pushed into a van and . . . I was very startled."  Defendant explained that as he was leading Plaintiff to the custody van, another protester confronted him, and he pushed Plaintiff into a van with one hand to hold her in place while he

used his other hand to repel the protester. Although Plaintiff allegedly suffered a bruise on her head and her shoulder, two photographs taken after the incident show no sign of serious head injury. The video does not show Defendant shoving Plaintiff into the van, but there is nothing about her injuries, her own deposition testimony, or the deposition testimony of Defendant Kruger that suggests the degree of force used by Defendant was enough to cause serious physical injury. Indeed, Plaintiff's statement to the effect that Defendant's push "startled" her suggests that the amount of force used by Defendant was minimal.

In her cross–motion for summary judgment and accompanying affidavit, Plaintiff argues Defendant "slammed" her head into the van without provocation or justification. The court is not persuaded that Plaintiff's most recent characterization of Defendant's conduct raises a material issue of fact. It is clear that a party may not "substitute an affidavit alleging helpful facts for earlier deposition testimony harmful to its case in order to avoid summary judgment." School District 1J Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir. 1993). As noted, in her earlier deposition testimony Plaintiff described Defendant's actions as "push," which "startled" her. Plaintiff's deposition testimony supports the court's conclusion that Defendant's use of force in shoving Plaintiff was minimal. Plaintiff's recent affidavit, however, contradicts her earlier deposition testimony. Accordingly, Plaintiff's attempt to bolster her excessive force claim by re-characterizing Defendant's conduct as "slam" rather than a push should be stricken from the record.

### 2. Governmental Interests

The second step in the court's excessive force balancing test involves an evaluation of the "governmental interests at stake." Deorle, 272 F.3d at 1280. Here, the court's inquiry should

focus on the totality of the circumstances, including: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; and 4) any other exigent circumstances that existed at the time of the arrest. Graham, 490 U.S. at 396; Deorle, 272 F.3d at 1280. A court's inquiry into whether the force used by an officer was reasonable must allow for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

Here, the governmental interest in maintaining order and controlling a large, and unlawfully assembled crowd was substantial. Although Plaintiff was arrested for a non-violent offense and Kruger had no reason to believe that she presented an immediate security threat to the officers or the public, the circumstances surrounding Plaintiff's arrest presented serious safety concerns for both Officer Kruger and Plaintiff. Indeed, the undisputed video evidence demonstrates the chaotic and unpredictable aggressive behavior of other protesters in the park. As soon as Kruger took Plaintiff into custody, several other protesters began to shout and "rush in" on him. As Kruger took Plaintiff into custody, she attempted to pull away and dropped to the ground, passively resisting arrest. Having made the decision to arrest Plaintiff, Kruger had a substantial interest in extricating her from the crowd as quickly as possible in light of Plaintiff's passive resistence and the aggressive behavior of other protesters in the park. The minimal degree of force Defendant used in dragging Plaintiff a short distance out of the park was a reasonable reaction to the threat of the approaching crowd. Moreover, the force used was neither potentially lethal nor likely to cause serious bodily injury.

Plaintiff argues that "nothing prevented Kruger from using mere presence or verbal commands to arrest Hicks." Plaintiff maintains that had Kruger told her to stop or to follow him, she would have. In essence, Plaintiff's argument is that because Kruger could have arrested Plaintiff without the use of force, his use of force was unreasonable. Plaintiff's argument lacks merit. Plaintiff cites no authority to support her position, and it is well settled that police officers are not required to use the least intrusive means to affect an arrest. Forrester, 25 F.3d at 807. Instead,

> the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene . . . . Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing the arrest is simply not the issue.

Id. at 807-08.

Examining the circumstances from the perspective of a reasonable officer at the scene, Defendant Kruger's decision to remove Plaintiff from the crowd was objectively reasonable. Portland Police clearly had a substantial governmental interest in maintaining order at the park. Accordingly, the police issued a lawful order to disperse. Kruger saw Plaintiff violate the order to disperse, and then retreat into the crowd of protesters. Kruger stated that in his experience making arrests in a large crowds, it was best to apprehend a suspect quickly to avoid the possibility that someone in the crowd would attempt to interfere with the arrest. Here, a protester did in fact attempt to interfere with Plaintiff's arrest, and Defendant pushed Plaintiff into the van with one hand while repelling the protester with the other. Under the circumstances, Defendant could have reasonably concluded that pursuing Plaintiff through a hostile crowd would have elevated the risk of injury to himself, other officers, protesters, and Plaintiff. In addition, there is no evidence that Defendant used more force than necessary to arrest or detain

Plaintiff. Indeed, there is no indication that the degree of force Defendant used was enough to cause serious physical injury.  Although a plaintiff need not prove substantial injury to bring an excessive force claim, McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988), in light of the circumstances of Plaintiff's arrest and the governmental interests in maintaining order and officer safety, Kruger's use of minimal force in arresting Plaintiff was objectively reasonable.

Even if Plaintiff could prove Kruger used excessive force, Officer Kruger is entitled to qualified immunity because Plaintiff has failed to prove that his conduct was so clearly unlawful that a reasonable officer would have known he was violating Plaintiff's constitutional rights. Saucier, 533 U.S. at 201.  Plaintiff has failed to cite any pertinent cases that would have alerted a reasonable officer that Kruger's conduct under the circumstances in the present case would violate a clearly established right.  In fact, cases in the Ninth Circuit appear to suggest the opposite. On several occasions, courts have found more aggressive police conduct objectively reasonable.  See e.g., Saucier, 533 U.S. at 208-09 (no clearly established rule that would prohibit two officers from arresting a demonstrator and half-walking and half-dragging him out of the area, and then shoving or throwing him into a van); Jackson v. City of Bremerton, 268 F.3d 646, 652-53 (9th Cir. 2001) (applying Graham factors and concluding that spraying a plaintiff's hair with a chemical irritant, pushing her to the ground to handcuff her, and roughly pulling her to her feet during her arrest was not excessive force); Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994) (the use of "pain compliance techniques" to remove anti-abortion demonstrators who were blocking access to an abortion clinic was objectively reasonable); Eberle v. City of Anaheim, 901 F.2d 814, 819-20 (9th Cir. 1990) (police officer's use of a finger hold to control a belligerent football fan was objectively reasonable).

The cases that Plaintiff does cite are distinguishable.  In Hope v. Pelzer, 536 U.S. 730 (2002), for example, the U.S. Supreme Court found an obvious Eighth Amendment violation and denied the defendant's qualified immunity claim where a prisoner had been handcuffed to a hitching post for approximately seven hours in the sun, during which he was severely sunburned and given water only once or twice.  In McDowell v. Rogers, 863 F.2d 1302 (6th Cir. 1988), a police officer beat the plaintiff with a night stick shortly after his arrest and allegedly "choked the wind out of the plaintiff."  Finally, in McDonald v. Haskins, 966 F.2d 292 (7th Cir. 1992), a police officer held a gun to the head of a nine-year old and threatened to pull the trigger during a search of the boy's home.  Plaintiff cannot seriously contend that Kruger's conduct—that is, dragging Plaintiff a short distance out of the park and shoving her into a van while fending off protesters who were "rushing in" on him—is analogous to the police conduct in any of the cases she cites.  Because Plaintiff has failed to prove that Kruger's conduct under the circumstances clearly violated her constitutional rights, Kruger is entitled to qualified immunity on Plaintiff's excessive force claim.

## IV.  First Amendment Claim

Plaintiff's fifth cause of action alleges that Kruger's unlawful arrest violated Plaintiff's First Amendment right to free speech and assembly "in that defendant's conduct was designed to silence plaintiff's lawful political expression and deter future lawful political expression."  Complaint ¶ 12.  Plaintiff maintains that she was a visible and vocal anti-war protestor, and that the video footage taken at the Columbia Annex Park demonstrates that Kruger and the City of Portland intended to "teach her a lesson and quiet her First Amendment rights" by forcibly and wrongfully arresting her without probable cause.  Defendants argue there is no evidence to

support a conclusion that Kruger's decision to arrest Plaintiff was motivated by a desire to interfere with any right protected by the First Amendment.

"State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment." Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Accordingly, a police officer violates a person's First Amendment rights if, by his actions, he deters or chills the person's political speech and such deterrence is a substantial or motivating factor in taking the actions. Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1999); Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).

Here, Plaintiff has failed to introduce any evidence that Kruger's actions actually deterred any protected political speech. Plaintiff had no protected First Amendment to enter the street in violation of a lawful order to disperse. See Colten v. Kentucky, 407 U.S. 104, 109 (1972) (holding that a plaintiff's "conduct in refusing to move on after being directed to do so was not, without more, protected by the First Amendment"). Nothing about Plaintiff's defiance of the lawful dispersal order implies any politically motivated activity. Indeed, Plaintiff stated that she stepped into the street to see "what was going on." Curiosity about police activity, however, does not amount to constitutionally protected speech or expression. See id. (There is "no constitutional right to observe issuance of a traffic ticket or to engage the issuing officer in conversation . . . .").

Although Plaintiff certainly had a constitutional right to join the protest that day at the Columbia Annex Park, she has produced no evidence to suggest that Kruger arrested her to quiet her political expression. Plaintiff suggests that her visibility in the peace movement coupled with Kruger's alleged statement that Plaintiff had been "pushing her luck for too long" is

evidence of his intent to deter her First Amendment rights. The court disagrees. A more plausible explanation for Kruger's alleged statement was that he saw Plaintiff enter the street on two separate occasions in violation of the police dispersal order. If that was the case, she was "pushing her luck." In any event, Kruger's alleged statement—"you've been pushing you luck for too long"—does not, by itself, create a material issue of fact as to his motivation in arresting Plaintiff. There is no indication that Kruger knew Plaintiff, or was aware of Plaintiff's role in the anti-war protest prior to the events of August 21, 2003. In fact, there is no evidence that Kruger was even aware of Plaintiff's presence at the protest until she stepped into the street in violation of a lawful police order.

Moreover, there is no evidence that Woboril ever spoke to Kruger about Plaintiff. Nor is there any evidence that Woboril or any other employee of the City of Portland ordered or encouraged Kruger to arrest Plaintiff in an effort to suppress her First Amendment rights. Indeed, Plaintiff acknowledged in her deposition, "I don't think that they (the police) thought in their head, contrived this idea that they were going to curb my political expression." Because Plaintiff has failed to present any evidence raising a material issue of fact as to Kruger's motivation in arresting her, Defendants' motion for summary judgment on Plaintiff's First Amendment claim should be GRANTED.

## V. State Law Claims

When a "district court has dismissed all claims over which it has original jurisdiction," it has the discretion to "decline to exercise" supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); Brady v. Brown, 51 F.3d 810, 815-16 (9th Cir. 1995). This court exercises its discretion to accept supplemental jurisdiction over Plaintiff's state tort claims. Plaintiff's claims arise out of

Kruger's arrest of Plaintiff on August 21, 2003.  Moreover, this case has been pending in this court since November 4, 2004.  Considerable judicial resources have already been expended in resolving Plaintiff's claims in this court, which was the forum Plaintiff initially chose. This court clearly has jurisdiction over the Plaintiff's state law claims as they are sufficiently related to the claims over which this court has original jurisdiction as to form part of the same case or controversy.  28 U.S.C. § 1367(a).  Plaintiff's state law claims raise no novel or complex state law issues, and she has not identified any unusual or compelling circumstances that would merit this court declining to exercise jurisdiction to allow her to re-file her tort claims in state court.

A.  Intentional Infliction of Emotional Distress

Plaintiff alleges "[t]he wrongful arrest of plaintiff by defendant Kruger constituted the intentional infliction of emotional distress in that Kruger intended to cause plaintiff emotional distress by arresting her and shoving her in a van." Complaint ¶ 10.  Defendants contend Plaintiff has failed to state a claim for intentional infliction of emotional distress.

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: 1) the defendant intended to inflict severe mental or emotional distress; 2) the defendant's acts caused the plaintiff severe mental or emotional distress; and 3) the defendant's acts consisted of "some extraordinary transgression of the bounds of socially tolerable conduct." McGanty v. Staudenraus, 321 Or. 532, 543 (1995) (quoting Sheets v. Knight, 308 Or. 220, 236 (1989)).  The intent element may be satisfied where the actor knows that such distress is certain, or substantially certain to result from his conduct.  McGanty, 321 Or. at 550-51.  Justification is a complete defense to a plaintiff's allegations of intentional infliction of emotional distress. Gigler v. City of Klamath Falls, 21 Or. App. 753, 763 (1975).

Here, Kruger was acting in the normal course of his duty. As noted, Kruger had probable cause to believe Plaintiff had committed a crime, and therefore his arrest of Plaintiff was reasonable under the Fourth Amendment. It would be somewhat incongruous for the court to conclude that Kruger's conduct in effecting the arrest of Plaintiff was reasonable for Fourth Amendment purposes, but that the same conduct amounted to an "extraordinary transgression of the bounds of socially tolerable conduct," so as to give rise to an intentional infliction of emotion distress claim. In any event, Plaintiff has failed to proffer any evidence that Kruger intended to cause, or actually did cause severe mental or emotional distress. Accordingly, Kruger is entitled to summary judgment as to Plaintiff's claim of intentional infliction of emotional distress.

### B. Battery

As her fourth cause of action, Plaintiff alleges "[t]he wrongful arrest and shoving of plaintiff by defendant constituted battery." A battery occurs when a person intentionally causes harmful or offensive contact with another. See Holloway v. Republic Indem. Co. of America, 201 Or. App. 376, 389 (2005). Assault is an intentional attempt to do violence to the person of another coupled with present ability to carry the intention into effect. Cook v. Kinzua Pine Mills Co., 207 Or. 34, 47 (1956). An officer acting in the course of his official duty, however, cannot be held liable for assault and battery unless the officer uses excessive force. Gigler v. City of Klamath Falls, 21 Or. App. 753, 763 (1975); Hatfield v. Gracen, 279 Or. 303, 307 (1977) ("Under common law, one is privileged to use reasonable physical force in defending or recapturing property or in making an arrest."); see also Or. Rev. Stat. § 161.235(1) ("[A] peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary . . . [t]o make an arrest . . . ."). Here, Kruger

had probable cause to arrest Plaintiff, and the force he used was not excessive under the totality

of the circumstances.  Thus, Kruger cannot be held liable for assault and battery as a matter of

law, and he is entitled to summary judgment as to Plaintiff's battery claim.

## C.  Negligence

Plaintiff alleges that the City of Portland was negligent in hiring, training and supervising

Officer Kruger.  Plaintiff notes that the Los Angeles Police Department and the Washington

State Police rejected Kruger's employment application due to failed background checks, and

argues that the City's failed to complete a thorough background check.  Plaintiff also points to

the fact that Kruger was named as a defendant in two previous lawsuits, both with allegations of

excessive force in the deployment of pepper spray.  Finally, Plaintiff makes an oblique reference

to Kruger's nickname—"The claw"—and his interest in Nazi paraphernalia as evidence of the

City's negligence in hiring and supervising Kruger.  Defendants maintain that Plaintiff has not

and cannot show any evidence of negligent hiring, training, or supervision of Kruger.

Alternatively, Defendants contend the City is immune from such suit.

### 1.  City of Portland

Under Oregon law, "the allocation of personnel and the determination of what

qualifications are necessary in order to perform a particular job are immune discretionary acts."

Christensen v. Epley, 36 Or. App. 535, 545 (1978); see also Or. Rev. Stat. §  30.265(3)(c).

Decisions concerning the training and allocation of personnel are "of the type which should not

be subject to review by the courts."  Christensen, 36 Or. App. at 545.  Accordingly, Plaintiff's

claim against the City of Portland for negligent hiring and training practices should be dismissed.

Even if Plaintiff's claims were not barred by Oregon law, to establish liability for negligence, a plaintiff must show that the defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." Fazzolari v. Portland School District No. 1J, 303 Or. 1, 17 (1987). As noted, the court concludes that Defendant Kruger had probable cause to arrest Plaintiff, and the force he used in executing the arrest was reasonable. It is difficult to imagine how the City of Portland could be found negligent for the conduct of one of its employees that was reasonable and lawful under the circumstances. In any event, Plaintiff has failed to offer any probative evidence to support her claim that the City was negligent in hiring, supervising, or training Officer Kruger. Even if Plaintiff's allegations relating to Defendant Kruger's unsuccessful employment applications in two other states, his involvement in two other lawsuits, his nickname, and his collection of Nazi paraphernalia were true, those facts have limited—if any—evidentiary value. Moreover, Plaintiff has not introduced any evidence that the City's hiring practices actually caused Plaintiff's injury.

2.  Defendant Kruger

Plaintiff also alleges that her wrongful arrest was the "proximate result of . . . the negligence of Kruger in effectuating an unsafe and false arrest." In Oregon, however, evidence of intentional conduct may not support a claim for negligence. See Kasnick v. Cooke, 116 Or. App. 580, 583 (1992) ("[P]laintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence."). When a defendant's conduct is wilful and intentional, it is no longer negligence. Denton v. Arnstein, 197 Or. 28, 45 (1952). Here, there is no real dispute that Defendant Kruger intended to arrest

Plaintiff, and take her out of the crowd.  As noted, the court concludes that Defendant Kruger had probable cause to arrest Plaintiff.  Moreover, Defendant's use of force in effecting Plaintiff's arrest was neither unreasonable nor excessive.  Having concluded that Defendant Kruger's conduct was reasonable under the Fourth Amendment, it would be odd to conclude Defendant liable under a state law theory of negligence (*i.e.*, breaching his duty to conform his behavior to that of a reasonably prudent person).

Defendants maintain that even if Kruger was negligent, his conduct was justified and privileged under Oregon law.  As noted, Officer Kruger had probable cause to believe Plaintiff violated the police dispersal order.  See Or. Rev. Stat. §§ 162.247 (Interfering with a peace officer); 131.675 (Dispersal of Unlawful or Riotous Assemblages).  Under Oregon law, a police officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed any crime in the officer's presence.  Or. Rev. Stat. § 133.310.  In addition, Or. Rev. Stat. § 133.315 grants police officers immunity from civil liability for making a warrantless arrest pursuant to Or. Rev. Stat. § 133.310, provided the officer acts in good faith and without malice.

Here, the Portland Police Bureau closed the street adjacent to the Columbia Annex Park in response to the large number of protesters attempting to block the street.  Police ordered the protesters to stay out of the street.  Plaintiff does not dispute the Portland Police Bureau's authority to issue such an order.  Kruger arrested Plaintiff after he saw her go into the street in violation of a lawful dispersal order.  Thus, Kruger had probable cause to arrest Plaintiff for violating Or. Rev. Stat. § 162.247, Interfering with a Peace Officer.  Because Plaintiff has failed to introduce any material evidence of bad faith or malice on the part of Officer Kruger, he is

immune from liability under Or. Rev. Stat. § 133.315. Alternatively, Defendants may rely on Or. Rev. Stat. § 30.265(3)(e), which insulates public officers and bodies from liability under State law for "[a]ny claim arising out of riot, civil commotion, or mob action or out of any act or omission in connection with the prevention of any of the foregoing."

## **RECOMMENDATION**

For the reasons stated above, Defendants' Motion for Summary Judgment (doc. 23) should be GRANTED, and Plaintiff's Cross–Motion for Partial Summary Judgment (doc. 32) should be DENIED. The above Findings and Recommendation will be referred to a United States District Court Judge for review. Objections, if any, are due September 28, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due within 14 days, and the review of the Findings and Recommendation will go under advisement on that date or when the first response is filed, whichever occurs first.

DATED this 13th day of September, 2006.


      /s/Donald C. Ashmanskas
        Donald C. Ashmanskas
      United States Magistrate Judge

PAGE 30 – FINDINGS AND RECOMMENDATION